(65 South. 877)

No. 20433.

STATE v. WILLIAMSON et al.

(March 2, 1914. On Rehearing, June 29, 1914.)

*(Syllabus by the Court.)*

1. BAIL (§ 44*)—RIGHT TO RELEASE ON BAIL.

Article 12 of the state Constitution of 1913 provides that: "All persons shall be bailable by sufficient surety, unless for capital offenses where the proof is evident or presumption great, or unless after conviction for any crime or offense punishable by death or with imprisonment at hard labor." The same provision is contained in previous Constitutions since, and including that of, the year 1852.

[Ed. Note.—For other cases, see Bail, Cent. Dig. § 145; Dec. Dig. § 44.*]

2. BAIL (§ 44*)—RIGHT TO RELEASE ON BAIL.

Under the above provision (Const. 1913, art. 12) contained in the Constitution of 1852, the Legislature in 1855, in Act No. 121, § 32, entitled "An act relative to criminal proceedings," directed the sheriff of the court to take persons convicted of crimes who had been sentenced to death or imprisonment at hard labor into custody, and to keep them confined in the parish jail, notwithstanding any appeal or reprieve until the final action of the Supreme Court, or of the Senate on the reprieve. This provision of law is contained in section 1007, Rev. St.; Ex parte State ex rel. Collette, 106 La. 221, 30 South. 746.

[Ed. Note.—For other cases, see Bail, Cent. Dig. § 145; Dec. Dig. § 44.*]

3. BAIL (§ 77*)—FORFEITURE—PROCEEDINGS.

Section 1032, Rev. St., provides for the forfeiting of all bail bonds, and directs proceedings therefor. A proceeding for the forfeiture of a bail bond given for the appearance of a person convicted and sentenced to work on the public roads is properly taken under section 1032, Rev. St.

[Ed. Note.—For other cases, see Bail, Cent. Dig. §§ 335–349, 379, 403; Dec. Dig. § 77.*]

4. BAIL (§ 55*)—ESTOPPEL TO DENY VALIDITY —SURETY.

The surety who, upon the execution of a bond, obtains the release of an accused in actual custody is estopped from denying either the regularity of the bond or of the proceedings under which it was allowed. Marr's Crim. Jur. §§ 206, 209, 211.

[Ed. Note.—For other cases, see Bail, Cent. Dig. §§ 213–224, 228–238, 246–253; Dec. Dig. § 55.*]

5. BAIL (§ 77*)—FORFEITURE PROCEEDINGS— JURISDICTION.

The surety on a bond given in a criminal case "incurs a civil obligation." But that fact

is not considered as controlling the question of jurisdiction. State v. Toups, 44 La. Ann. 896, 902, 11 South. 524; State v. Frith, 14 La. 191; State v. Desforges, 5 Rob. 253; State v. Ansley, 13 La. Ann. 298; State v. Hendricks, 40 La. Ann. 719, 5 South. 24, 177.

[Ed. Note.—For other cases, see Bail, Cent. Dig. §§ 335–349, 379, 403; Dec. Dig. § 77.*]

Appeal from First Judicial District Court, Parish of Caddo; T. F. Bell, Judge.

Proceedings for forfeiture of bail bond by the State against J. R. Williamson and his surety. From judgment for the State, the surety appeals. Affirmed.

Blanchard & Smith, for appellant J. W. Peyton. R. G. Pleasant, Atty. Gen., and W. A. Mabry, Dist. Atty., of Shreveport (G. A. Gondran, of New Orleans, of counsel), for the State.

SOMMERVILLE, J. Defendant, Williamson, was tried and convicted of retailing liquors without a license. The verdict and sentence were affirmed by the Supreme Court. 133 La. 1052, 63 South. 515. During the pendency of the appeal in the Supreme Court Williamson was admitted to bail. Williamson and his surety were subsequently called in the district court, and, Williamson failing to appear, the bail bond was declared forfeited, and judgment entered against defendant and his surety. The surety appeals.

[1] It is provided in article 104, state Constitution of 1852, that:

"All prisoners shall be bailable by sufficient sureties, unless for capital offenses, where the proof is evident or presumption great, or unless after conviction for any offense or crime punishable with death or imprisonment at hard labor."

This provision has been in the Constitutions of the state since 1852, and is now a part of article 12 of the Constitution of 1913.

[2] In 1855 the Legislature, to conform in part to the above-quoted article of the Constitution, passed Act No. 121 of that year, entitled "An act relative to criminal proceedings," the thirty-second section of which, at page 155, is now section 1007 of the Revised Statutes. It reads:

"In all cases where persons convicted of crimes shall be sentenced to death, or to imprisonment at hard labor, it shall be the duty of the sheriff of the court where the sentence has been pronounced immediately to take the person convicted into custody, and to keep him confined in the parish jail, notwithstanding any appeal or reprieve, until the final action of the Supreme Court on the appeal, or of the Senate on the reprieve."

Under the foregoing provisions of law, it is held in the case of State ex rel. Collette, applying for writ of habeas corpus, that a convicted person who had not been sentenced to death or to imprisonment at hard labor might be released on bail during the pendency of his appeal to the Supreme Court. 106 La. 221, 30 South. 746. And Williamson, under these authorities, was released on bail from custody during the pendency of his appeal to this court. After the judgment appealed from had been affirmed, and had become final, and after he had failed to appear when called before the district court, and his surety had been called on to produce him, judgment was rendered against him and his surety on the bail bond furnished by them.

[3] The proceedings for the forfeiture of the bond were taken under section 1032, R. S.; but the surety, appellant here, contends that section 1032, R. S., is not applicable to bonds given by persons already convicted of crimes and sentenced by the district court, and who, pending an appeal to the Supreme Court, have given bonds to appear and undergo sentences imposed, in the event the Supreme Court affirms the judgments of the district court.

Section 1032, R. S., is a part of the same statute of 1855 as is section 1007, under which the defendant was released on the bond signed by him and his surety; and said section 1032, in express language, refers to "any bond, recognizance or obligation whatsoever." It reads:

"It shall be the duty of the Attorney General and the several district attorneys, in their respective districts, on the second, or any other day thereafter, of each regular jury term of the district court, leave of the court being first had and obtained, which leave shall always be presumed, to call any or all persons who may have entered into any bond, recognizance or obligation whatsoever, for their appearance or attendance at court, and also to call on the securities to produce instanter, in open court, the person of such defendant or party accused; and upon failure to comply therewith, on motion of the attorney representing the state, the court shall forthwith enter up judgment against principal and securities in solido for the full amount of the bond, recognizance or obligation.

"The judgment so rendered may at any time during the same term of the court for all the parishes of the state, except the parish of Orleans, and for the parish of Orleans at any time within ten judicial days after notice of the judgment to the parties, be set aside upon the appearance, trial, conviction and punishment of the defendant or party accused.

"Such judgment shall not be rendered in case it shall be made to appear to the satisfaction of the court, by the evidence of one or more disinterested and credible witnesses, that the defendant or party accused is prevented from attending by some physical disability existing at the time."

The above section has been amended in some particulars, unnecessary to be noticed here. Act 76, 1898, p. 99; Act 17, 1900, p. 23.

The language in the first paragraph of the foregoing section clearly provides for the calling in the district court of—

"any or all persons who may have entered into any bond, recognizance or obligation whatsoever, for the appearance or attendance at the court, and also to call on the security to produce instanter, in open court, the person of such defendant or party accused."

The language is general and all-embracing in its terms, and covers the case of one who has been convicted and has appealed, and has been released on bond during the pendency of his appeal.

Appellant argues that the second paragraph of the section provides that the judgment so rendered may "be set aside upon the appearance, trial, conviction, and punishment of the defendant, or party accused," and that it does not apply to one who has been con-

victed, and therefore that the district attorney was without authority to proceed under section 1032 for the forfeiture of the bond in this case. But the language in the second paragraph, just quoted, provides that the judgment of forfeiture may be set aside after "conviction and punishment," and it may well be construed to apply to one who had been admitted to bail during the pendency of his appeal to this court.

Section 1032, R. S., is applicable to the forfeiture of any bond, recognizance, or obligation; and, this action having been taken thereunder, this proceeding is regular and valid.

[4] Appellant argues that the bail bond does not show that J. W. Peyton is surety, or that the bond was accepted by the sheriff, or that it was filed in court before the day of trial. But the surety, upon the execution of the bond sued on, obtained the release of the accused, who was then in custody of the sheriff, by giving the bond here forfeited to the sheriff, and he is estopped from either setting up the irregularity of the bond or of the proceedings under which it was allowed. State v. Doyle, 42 La. Ann. 640, 7 South. 699; Marr's Crim. Jur. § 206, and authorities there cited. The accused was in the custody of the sheriff, and it may be fairly inferred that the latter accepted the bond when he delivered the prisoner into the custody of his surety, the appellant. State v. Ansley, 13 La. Ann. 298; Marr's Crim. Juris. § 206.

Appellant admits the execution of the bond in the fourth paragraph of his bill of exceptions and assignment of errors, and the judge in his per curiam refers to the admission by saying that the counsel for the surety objected to going to trial on December 20th—

"and stated in open court that the said J. R. Williamson was out of the state, and that the principal on the bond had located him, and asked that the time be extended until Decem-

ber 22, 1913, at which time he was sure that the surety would have his principal in court."

The omission in the body of the bond of the name of the surety is immaterial. Valentine v. Christie, 1 Rob. 298. And the bond, having been introduced in evidence and filed, forms part of the record; it is therefore immaterial that it was not filed until the day of trial. Marr's Crim. Jur. §§ 208, 209; State v. McKeown, 12 La. Ann. 596.

[5] While the action for the forfeiture of a bail bond evidences a dereliction to the court on the part of the surety, and the resulting forfeiture thereof is its penalty, yet this default is not per se a criminal act punishable as such. It is conceded in all recent decisions on the subject, in so far as the recognizance is considered intrinsically, that action for default of a bond is a civil proceeding. It is viewed in a different way in determining the question of jurisdiction. We say in State v. Hendricks, 40 La. Ann. 719, 5 South. 24, 177:

"Intrinsically, the proceeding may be viewed as civil in character. It is based on a contract under private signature, on which a money judgment can be rendered, which may be executed on the issuance of a fi. fa. It is not a proceeding for the recovery of a fine inflicted for the commission of an offense. In so saying, we do not lose sight of the fact that it has been treated as a criminal proceeding in order to determine questions of jurisdiction in cases of appeal from judgment of forfeiture of bail bonds." State v. Toups, 44 La. Ann. 896, 11 South. 524.

Judgment affirmed.

On Rehearing.

PROVOSTY, J. The rehearing was granted in this case, not because the court doubted the correctness of the opinion heretofore handed down, or of anything said in it, but simply because one of the three justices who alone had participated in it had left the bench when the application for a rehearing came to be considered, and it was in consequence impossible to know whether on this application for a rehearing all three of the justices who had rendered the opinion would adhere to it.

On the original hearing and again on the rehearing the argument was pressed that, inasmuch as that part of Act 17, p. 23, of 1900, providing that on certain conditions a judgment of forfeiture of a bail bond may be set aside is inapplicable to the forfeiture of a bail bond given after conviction, the other part of said statute, providing for the forfeiture of bail bonds, must also be inapplicable. In further answer to that argument, we will say that the language of the statute is that "any and all persons who may have entered into any bond, recognizance or obligation whatsoever in any criminal case for their appearance at court" are authorized to be called, and their bond forfeited, and that therefore, if the surety on a bond taken after conviction could not thus be called, the reason would have to be that such a bond taken after conviction is not a bond taken in a criminal case—a contention which, we imagine, no one would make.

We will add that, if the conditions upon which a forfeiture may be set aside are inapplicable to bail bonds taken after conviction, the consequence simply is that such bail bonds cannot be set aside on those conditions. The consequence is not that bail bonds of that character cannot be forfeited at all, especially in view of the fact that the same statute which authorizes them to be taken provides for the forfeiture of all bail bonds of whatsoever kind taken in a criminal case.

The judgment of this court herein is reinstated and affirmed.